POLEN, Judge.
The Florida Insurance Guaranty Association, Inc. (FIGA) appeals a final judgment in favor of an injured plaintiff, Terrance Johnson, for costs of $3,062.11 over and above the damage award of $9,900.00. Pursuant to section 631.57(l)(b), Florida Statutes (1991), FIGA became liable to Johnson upon the insolvency of the tortfeasor’s insurer, First Miami Insurance Company (First Miami), after Johnson’s jury trial against the tortfea-sor. FIGA contests the cost award as being in excess of the policy limits.[1] We affirm.
It is established law in Florida that after an insurer becomes insolvent, FIGA “stands in the shoes” of the insolvent insurer, and, pursuant to section 631.57(3)(b) Florida Statutes (1991), will “be deemed the insurer *240 to the extent of its obligations on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent” (emphasis added). See Peoples v. Florida Ins. Guaranty Assoc., 313 So.2d 40, 41 (Fla. 2d DCA 1975), cert. denied, 327 So.2d 34 (Fla.1976). Consequently, at bar, a crucial issue in this case is the scope of coverage oí the insurance policy issued to the defendant by First Miami.
In the instant case, the appellant FIGA, in contending that the trial court erred, relies upon the language of the policy, which provides:
The limits of liability shown in the declarations for “each person” for bodily injury liability is our maximum limit of liability for all damages for bodily injuries sustained by any one person in any one auto accident.
Citing section 631.57(l)(a)(3), Florida Statutes, FIGA argues that, based on this policy language, as well as the applicable provisions of the FIGA Act, the trial court committed reversible error in holding FIGA liable for a cost judgment which, it claims, was (a) not within the coverage of the insolvent insurer’s policy, and (b) in excess of the obligation of the insolvent insurer under the policy from which the claim arose. FIGA cites General Accident F. and L. Assur. Corp. v. Liberty Mut. Ins. Co., 260 So.2d 249 (Fla. 4th DCA 1972), for the proposition that “a court cannot, under the guise of construction, make a new contract for the parties.”
Conversely, the appellee Johnson argues that the “costs” which it seeks are, in fact, consistent with the terms of the existing policy. The appellee contends that the “costs” are covered within the “Supplementary Payments” provision of the insolvent insured’s policy, which provides, in pertinent part: “[i]n addition to our limit of liability, we will pay on behalf of a covered person ... [ojther reasonable expenses incurred at our request.” At bar, Johnson asserts that the “request” referred to took the form of First Miami’s election to litigate the matter. Johnson contends that, having thus chosen to litigate, the taxable costs entered against the insured were, therefore, expenses covered under the terms of the policy. The award of taxable costs in this case are reasonable expenses incurred by the plaintiff, and charged to the defendant, as a result of the litigation of the action.
In the instant case, First Miami made the decision to defend this action. Since First Miami had sole discretion regarding the decision to defend the lawsuit, it is obvious that the expenses incurred by the plaintiff in litigating the action were as a result of the insurance company’s choice not to settle the action. Thus, those expenses were incurred at the insurer’s request.
In addition, appellee contends that the language of the “Supplementary Payments” provision is unambiguous. However, the ap-pellee additionally points out that, in the event this court should find it to be ambiguous, any uncertainty must be construed against the insurer and in favor of the insured. See Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla.1975). See also Valdes v. Smalley, 303 So.2d 342 (Fla. 3rd DCA 1974), cert. discharged, 341 So.2d 975 (Fla.1976), and Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla.1975) (policy language which permits more than one construction must be liberally construed in favor of the insured to provide coverage). Thus, the “Supplementary Payments” provisions obviously have the intent of extending coverage and, therefore, must be construed liberally in favor of the insured. Accordingly, we affirm the trial court’s judgment in this regard.
The appellant further contends that there was no statutory basis upon which the court could have assessed the court costs against FIGA. Their position is that, pursuant to section 57.041, Florida Statutes (1991), costs are recovered against the “losing party.” See Johnson v. Schneegold, 419 So.2d 684 (Fla. 2d DCA 1982). See also Puig v. Saga Corp., 543 So .2d 238 (Fla. 3d DCA 1989). FIGA argues that because all costs incurred by Johnson, and subsequently assessed against FIGA, occurred prior to the time First Miami was declared insolvent, FIGA was not even a party to the action. Thus, the appellant further contends that, since FIGA was not the party against whom *241 Johnson prevailed, the court erred in assessing those costs against FIGA.
In response, the appellee again argues that the statutory basis upon which it relies is section 631.57(l)(b), Florida Statutes (1991) (the association shall “be deemed the insured to the extent of its obligation on the covered claims ... ”) (emphasis added). Thus, there is no merit to FIGA’s argument that it was not a party to the action. By virtue of its obligation as one who “stands in the shoes of’ the insolvent insurer, there is a statutory basis upon which to assess court costs against FIGA.
The judgment entered against FIGA, including the costs of $3,062.11, is affirmed in all respects.
DELL, C.J., and STONE, J., concur.

. First Miami's policy of insurance covering the tortfeasor had limits of liability of $10,000.00 less a $100.00 statutory deduction. This amount is not in dispute.