DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VIATCHESLAV KOKHAN** and **ZOIA KOKHAN,**
Appellants,

v.

**AUTO CLUB INSURANCE COMPANY OF FLORIDA,**
Appellee.

No. 4D18-3607

[May 20, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Raag Singhal, Judge; L.T. Case No. CACE17-000543.

Melissa A. Giasi of Giasi Law, P.A., Tampa, for appellants.

Kimberly Kanoff Berman and Michael A. Packer of Marshall Dennehey Warner Coleman & Goggin, Fort Lauderdale, and Corey K. Setterlund of Marshall Dennehey Warner Coleman & Goggin, Jacksonville, for appellee.

### *ON APPELLEE'S MOTION FOR REHEARING AND/OR*
### <u>*MOTION FOR REHEARING EN BANC*</u>

GERBER, J.

We grant in part and deny in part the appellee insurer's motion for rehearing, and substitute the following opinion for the opinion issued on March 11, 2020. We deny appellee's motion for rehearing en banc.

The homeowners appeal from the circuit court's final order granting the insurer's summary judgment motion on the homeowners' breach of contract action. The homeowners' action alleged they had filed a claim to be reimbursed for damages to their pool deck and surrounding structures due to a pool drainpipe leak, but the insurer improperly denied their claim on the basis that the policy's "water damage" and "wear and tear" exclusions barred their claim.

The circuit court agreed with the insurer's summary judgment motion that the policy's "water damage" exclusion barred the homeowners' claim.

However, the circuit court did not rule on the insurer's argument that the policy's "wear and tear" exclusion also barred the homeowners' claim.

On appeal, the homeowners argue the circuit court erred in finding the policy's "water damage" exclusion barred their claim. The homeowners further argue the policy's "wear and tear" exclusion did not bar their claim either.

We agree with the homeowners that the circuit court erred in finding the "water damage" exclusion barred their claim. The "water damage" exclusion's plain language does not apply to the homeowners' claim.

However, we do not reach the issue of whether the policy's "wear and tear" exclusion applied to the homeowners' claim, because the circuit court never ruled on that issue. We remand to the circuit court for that review.

We present this opinion in five sections:

1. The policy at issue;
2. The homeowners' claim and the insurer's denial;
3. The homeowners' breach of contract suit and the insurer's summary judgment motion;
4. This appeal; and
5. Our review.

## 1. *The Policy at Issue*

The insurer issued an "all risks" policy to the homeowners. "[A]n 'all-risk' policy is not an 'all loss' policy, and this does not extend coverage for every conceivable loss." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696-97 (Fla. 2016) (citation omitted). "An all-risks policy provides coverage for all losses not resulting from misconduct or fraud *unless the policy contains a specific provision expressly excluding the loss from coverage.*" *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576, 578 (Fla. 2d DCA 2014) (emphasis added; citation and internal quotation marks omitted). "[A]n insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect. The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms." *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018) (citation omitted). "In short, in all-risk policies . . . construction is governed by the language of the exclusionary provisions." *Sebo*, 208 So. 3d at 697.

Here, the "all risks" policy at issue contains the following provisions and exclusions which are relevant here:

> WHAT LOSSES ARE COVERED – COVERAGE A AND COVERAGE B
> Except as excluded under WHAT LOSSES ARE NOT COVERED PART I, we cover accidental direct physical loss to the property that is described under WHAT PROPERTY IS COVERED – COVERAGE A and COVERAGE B.
>
> . . . .
>
> WHAT LOSSES ARE NOT COVERED – PART I
>
> 1. We do not cover any loss to property insured under COVERAGES A, B or C that is caused by, resulting from, contributed to by, or consisting of:
>
> . . . .
>
> c. WATER DAMAGE, meaning:
>
> (1) flood, surface water, waves, tidal water, storm surge, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not driven by wind;
>
> (2) water or waterborne material or substance from outside of the plumbing system on the **residence premises** that enters the **residence premises** through sewers or drains;
>
> (3) water or waterborne material or substance which overflows or discharges from a sump, sump pump, or related equipment;
>
> (4) water below the surface of the ground, including water which exerts pressure on or seeps or leaks or flows through a building; sidewalk; driveway; foundation; swimming pool; spa; or other structure;
>
> (5) water which is released, overflows or escapes from a dam, levee, or other structure designed to contain surface water;
>
> whether caused by or resulting from human, animal, or naturally occurring forces, or however caused.

3

We do cover direct physical loss by fire, explosion or ***theft*** resulting from or occurring as a consequence of water damage.

. . . .

2.   We do not cover any loss to property insured under COVERAGES A or B that is caused by, resulting from, contributed to by, or consisting of:

. . . .

e.   Any of the following:

(1)   WEAR AND TEAR, marring, deterioration;

(2)   continuous or repeated seepage or leakage of water or steam over weeks, months, or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

. . . .

(7) cracking, shrinking, sagging, bulging, bending, expansion, or settling of:

(a)   driveways, walkways, or patios;

(b)   foundations, floors, walls;

. . . .

If a loss excluded under e. above causes or results in sudden and accidental escape of water from a plumbing system; a heating system; an air conditioning system; an automatic fire protective sprinkler system; or a household appliance, we do cover the direct physical loss caused by the water including the cost of tearing out and replacing any part of a building that is needed to repair the system or appliance.  We do not cover a loss to the system or appliance from which this water escaped.

(emphases in original).

## 2. *The Homeowners' Claim and the Insurer's Denial*

The homeowners claimed their pool's underground drainpipe had developed a leak, which eventually caused significant damage to their pool deck and surrounding structures, including an adjoining wall and the home's exterior walls.

The insurer sent an inspector to examine the homeowners' claim. The inspector issued an unsworn report of his findings. The inspector found:

1. Water leak from the pool did not cause damage to the pool deck and the surrounding structures, which included the north wall of the pool and the exterior walls of the residence.

2. Cracks in the concrete pool deck were caused by concrete shrinkage. Insufficient expansion/contraction control joints, which was a substandard construction detail, exacerbated the damage.

3. Cracks in the stucco on the exterior walls of the residence were caused by a combination of stucco shrinkage and slight differential downward displacement of the lower portion of the wall relative to the upper portion of the wall.

4. Separation and cracks in the north wall of the pool were caused by shrinkage of underlying cementitious materials and deterioration of bond between adhered materials.

Based on the inspector's report, the insurer denied the homeowners' claim under the policy's "wear and tear" exclusion. However, the insurer left open the possibility for the homeowners to obtain more information and resubmit their claim.

The homeowners hired a pool repair company, which confirmed the pool's underground drainpipe was leaking. The homeowners had the pool repair company replace the pool's piping system, and hired a separate company to resurface the pool deck. The homeowners then wrote a letter to the insurer containing the pool repair company's findings and demanding the insurer cover their expenditures.

The insurer continued to deny the homeowners' claim based on its inspector's findings.

### 3. *The Homeowners' Suit and the Insurer's Summary Judgment Motion*

The homeowners sued the insurer for breach of contract, alleging their pool's leaking drainpipe caused damages covered under the policy.

The insurer denied the homeowners' allegations and alleged several affirmative defenses. In pertinent part, the insurer alleged the policy's "water damage" and "wear and tear" exclusions barred the homeowners' claim.

The insurer moved for summary judgment. In the motion, the insurer argued the policy's "water damage" exclusion applied because the drainpipe leak was caused by "water below the surface of the ground, including water which exerts pressure on or seeps or leaks or flows through . . . a swimming pool." Additionally, the insurer argued the policy's "wear and tear" exclusion barred the homeowners' claim because the leaking drainpipe and damaged structures had deteriorated. In support, the insurer relied on its inspector's unsworn report's findings.

In response, the homeowners argued the insurer's summary judgment motion lacked evidentiary support because the inspector's report was unsworn and therefore was inadmissible hearsay.

At the hearing on the motion, the circuit court said it would not consider the inspector's unsworn report because it was hearsay.

Despite not considering the inspector's unsworn report, the circuit court nevertheless granted the insurer's summary judgment motion and entered a final judgment in the insurer's favor. Specifically, the circuit court's order stated, in pertinent part:

> [The insurer's] motion is GRANTED. Among other reasons, the Amended Complaint, paragraph 7, alleges that water damage due to pool leakage is a covered loss. It was undisputed this claim related to swimming pool water damage approximately six feet below the ground surface. This claim is specifically excluded under the plain terms of the insurance policy . . . .

The circuit court did not rule on the insurer's "wear and tear" exclusion.

### 4. *This Appeal*

This appeal followed.  The homeowners argue the circuit court erred in finding the policy's "water damage" exclusion barred their claim.  According to the homeowners, the "water damage" exclusion's plain language only applies to water pressure coming from outside, not a leak from within the plumbing itself.

Additionally, the homeowners argue the policy's "wear and tear" exclusion does not apply because the leak involved a "sudden and accidental escape of water from a plumbing system," which is an exception to the policy's "wear and tear" exclusion.

The insurer responds that the policy's "water damage" exclusion applies and, in the alternative, the policy's "wear and tear" exclusion applies, despite the inspector's unsworn report.  The insurer also argues the policy's "sudden and accidental escape of water from a plumbing system" exception to the "wear and tear" exclusion is inapplicable because the leak occurred slowly, and because "plumbing" plainly refers to the home's plumbing system, not the pool's plumbing system.

### 5. *Our Review*

"Our review of an order granting summary judgment is de novo, as is the interpretation of an insurance contract and the determination of whether the law requires the insurer to provide coverage.  Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Allstate Ins. Co. v. Manzo-Pianelli*, 152 So. 3d 654, 656 (Fla. 4th DCA 2014) (internal citation and quotation marks omitted).

"In deciding whether an all-risk policy excludes coverage for an insured's claimed damages, we are guided by well-established principles of insurance contract interpretation.  We begin with the guiding principle that insurance contracts are construed in accordance with the plain language of the policy as bargained for by the parties." *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (internal quotation marks and brackets omitted).

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975-76 (Fla. 2017) (citation omitted).

Here, the homeowners alleged the pool's drainpipe leak caused the damage to their pool deck and surrounding structures. This event would appear to fall outside of the policy's "water damage" exclusion subsection upon which the insurer relied. That subsection, referred to as subsection (4), defined excluded "water damage" as "water below the surface of the ground, including water which exerts pressure on or seeps or leaks or flows through a building; sidewalk; driveway; foundation; swimming pool; spa; or other structure." That language plainly refers to naturally-existing ground water, based on the description of the type of structures which may be affected by its exertion of pressure, seepage, leakage, or flow. In other words, this exclusion plainly refers to naturally-flowing water exerting pressure from *outside of* the plumbing system, not a leak from *within* the plumbing system itself. *See Hartford Accident & Indem. Co. v. Phelps*, 294 So. 2d 362, 363 (Fla. 1st DCA 1974) ("When we consider the terminology used in the exclusion clause in pari materia with the affirmative statement of coverage from leaks in the plumbing system, we conclude that the exclusion was intended to relate only to damage from water not emanating from the plumbing system.").

Our conclusion is consistent with a reading of that subsection in the context of the other four "water damage" exclusion subsections, all of which also plainly refer to naturally-flowing water or waterborne material or substances existing outside of the plumbing system. *See Orthopedic Specialists*, 212 So. 3d at 976 ("[W]hen analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others.") (citation omitted).

Subsection (1) defines excluded "water damage" as "flood, surface water, waves, tidal water, storm surge, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not driven by wind." Subsection (2) defines excluded "water damage" as "water or waterborne material or substance from *outside of the plumbing system* on the residence premises that enters the residence premises through sewers or drains." (emphasis added). Subsection (3) defines excluded "water damage" as "water or waterborne material or substance which overflows or discharges from a sump, sump pump, or related equipment."[1] And

---

[1] A sump is "a pit or reservoir serving as a drain or receptacle for liquids." *See* https://www.merriam-webster.com/dictionary/sump (last visited Feb. 17, 2020); *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) ("When a term in an insurance policy is undefined, it should be given its plain and

8

subsection (5) defines excluded "water damage" as "water which is released, overflows or escapes from a dam, levee, or other structure designed to contain surface water."

The fact that all of these "water damage" definitions are conditioned by the antecedent phrase "whether caused by or resulting from human, animal, or naturally occurring forces, or however caused," does not affect our conclusion. The water or waterborne material or substance which are the subjects of this causal condition still must be naturally-flowing or exist outside of the plumbing system.

Based on the foregoing plain language and contextual analyses, the circuit court erred in granting the insurer's summary judgment motion based on the policy's "water damage" exclusion.

As for the policy's "wear and tear" exclusion, the circuit court did not rule on that exclusion, so the homeowners' argument that the "wear and tear" exclusion did not apply is not ripe for our review. *See Green v. City of Pensacola,* 108 So. 2d 897, 899 (Fla. 1st DCA 1959) ("That matter was not directly passed upon by the trial court and is not a proper subject for review here.").

### *Conclusion*

Based on the foregoing, we reverse the circuit court's final order granting the insurer's summary judgment motion on the homeowners' breach of contract action based on the policy's "water damage" exclusion. We remand for the circuit court to reconsider the insurer's summary judgment motion, limited to the insurer's argument that the policy's "wear and tear" exclusion barred the homeowners' claim, as well as the homeowners' response that the policy's "sudden and accidental escape of water from a plumbing system" exception overcomes the "wear and tear" exclusion. We also remand for further proceedings if necessary.

*Reversed and remanded with instructions.*

LEVINE, C.J., and MAY, J., concur.

\*　　\*　　\*

**Not final until disposition of timely filed motion for rehearing.**

---

ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine such a meaning.") (citation omitted).

9